IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GABRIEL RIVERA-RODRIGUEZ,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

CIVIL NO. 11-2262 (ADC)
Criminal No. 07-121 (ADC)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

On March 19, 2007, petitioner Gabriel Rivera-Rodríguez (hereinafter "petitioner Rivera-Rodríguez") was charged in Criminal No. 07-121 (ADC), together with other co-defendants, in a two-count Indictment with violations related to drug trafficking offenses. Count One charged a conspiracy to possess with intent to distribute and distribution, on date unknown but no later than 2003, in excess of one (1) kilogram of heroin, a Schedule I, Narcotic Controlled Substance; in excess of five (5) kilograms of cocaine, a Schedule II, Controlled Substance; in excess of fifty (50) grams of cocaine base, a Schedule II Controlled Substance; and in excess of one hundred kilograms of marihuana, a Schedule I, Controlled Substance, as prohibited by Title 21, United States Code, Sections 841(a)(1) and 860. All in violation of Title 21, United States Code, Section 846.[1]

Petitioner Rivera-Rodríguez was convicted at a jury trial as to said Count One. The jury verdict showed that the jury unanimously agreed that it was proven beyond a reasonable doubt that the quantities of controlled substances which defendant Rivera-

---

[1] The second count of the Indictment refers to a narcotic forfeiture allegation. (Criminal No. 07-121, Docket No. 1).

Rodríguez conspired to possess with intent to distribute were the following: mixture or substance containing cocaine base (crack) was fifty (50) grams or more; heroin was less than one hundred (100) grams; the mixture or substance containing a detectable amount of cocaine was five (5) kilograms or more, and the quantity of a mixture or substance containing a detectable amount of marijuana was one hundred (100) kilograms or more. (Criminal No. 07-121, Docket No. 1124, Verdict Form).[2]

Petitioner Rivera-Rodríguez was sentenced to forty-three (43) years of imprisonment followed by supervised release of fifteen (15) years. Then after, petitioner Rivera-Rodríguez filed a direct appeal to the Court of Appeals for the First Circuit which issued its decision affirming the conviction and sentence imposed. *See* United States v. Rivera-Rodríguez, 617 F.3d 581 (1st Cir. 2010). (Criminal No. 07-121, Docket No. 2021).

On December 28, 2011, petitioner Rivera-Rodríguez filed a motion for post-conviction relief on grounds of ineffective assistance of counsel at trial and on appeal, under Title 28, United States Code, Section 2255. (Docket No. 1). Mainly, petitioner claims ineffectiveness regarding lack of opposition to the sentence imposed by enhancements for his supervisory role and weapons by his trial counsel. As to his appeal counsel, petitioner submits no allegations on appeal were submitted for miscalculation for the amount of drugs he should be held liable in the conspiracy based on a finding the amount of heroin was less

---

[2] This special verdict form is important because petitioner raises a claim as to the sentence that had to be imposed for the jury determined the amount of heroin being less than one (100) hundred grams.

than one hundred (100) grams and should have been sentenced for the least serious conspiracy related to heroin, as well as objected to the sentence imposed based on a murder being used as cross-reference.

On August 9, 2012, respondent United States of America (hereinafter "respondent") filed its response in opposition. (Docket No. 8). Petitioner Rivera-Rodríguez requested and was granted an opportunity to file a traverse which appears filed on October 18, 2012. On October 16, 2012, the matter was referred to a Magistrate Judge for report and recommendation. (Docket Nos. 11, 12 and 13).

## LEGAL ANALYSIS

In petitioner's post-conviction relief motion, he raises ineffective assistance of counsel as a violation to defendant's Sixth Amendment right for the following reasons:

(1) Appeal counsel failed to argue that defendant was sentenced above the statutory maximum for the least serious single conspiracy he was convicted, insofar as the jury having found only a limited amount of drugs in regard to the possession with intent to distribute heroin;

(2) Appeal counsel failed to argue the sentencing court erred by applying the standard to a cross-reference of a murder;

(3) Trial counsel failed to object the enhancements at sentence for weapons and a supervisory role;

(4) Trial counsel failed to inform there had been a plea offer of nineteen (19) years of imprisonment (235 months) made by the government;

(5) As to a previous plea offer of fifteen (15) years, trial counsel miscalculated the maximum sentence defendant would receive if he rejected said plea.

**A. Ineffective Assistance by Trial Counsel.**

To succeed on an ineffective assistance of counsel claim, petitioner has the burden of showing that: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *See* Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996).

In applying this test, first announced in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984), judicial scrutiny of counsel's performance must be highly deferential. There is, in other words, a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Insofar as claims three, four and five as mentioned above, the record clearly defies petitioner's averments as to his trial counsel. The third claim that trial counsel failed to object the enhancements at sentence for weapons and a supervisory role, the record shows no such enhancements were considered by the Court at the time of sentence and, thus, none was applied. (Criminal No. 07-2262, Docket No. 1935, Transcript Sentencing Hearing).

The claim raised by petitioner as item four, which states that trial counsel failed to inform there had been a plea offer of nineteen (19) years of imprisonment (235 months) made by the government and item five, as to a previous plea offer of fifteen (15) years, evidently show from petitioner's own averments that he was not willing to accept the plea offer even for the lower sentence of fifteen (15) years, which was indeed rejected. Thus,

Rivera-Rodríguez' averment that he may have considered a higher plea offer rather than going to trial, without more, is clearly also defied by the record.

Furthermore, the available record and the presentence report statements of defendant Rivera-Rodríguez further indicate he opted to go to trial since he wanted to prove that the main government witnesses were all liars with absolutely no credibility.[3] (Presentence report p. 11; Criminal No. 07-121, Docket No. 550; Docket No. 723 (consideration of plea offer with a total offense level 36 pending full discovery); Docket No. 902 (minutes setting trial for defendants who had not accepted plea offers); Docket No. 886 (defendant Rivera-Rodríguez' informative motion trial ready); Docket No. 980 (joinder to co-defendants' pretrial motions). Under such evidence as to petitioner's unwillingness to accept any plea offer but rather to go to trial, his mere averment in the petition for post-conviction relief regarding the possibility of a plea offer for more time than what he clearly rejected, is speculative, at the most.

The allegation of trial counsel's miscalculation as to the offense insofar of what could be the maximum sentence Rivera-Rodríguez would receive if he rejected said plea and such miscalculation would have made a difference in the decision to go to trial or to take a plea offer does not favor petitioner Rivera-Rodríguez in the claim of ineffective assistance. An inaccurate prediction concerning a sentence is not enough, standing alone, to demonstrate ineffective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441

---

[3] To establish defendant Rivera-Rodríguez' position as to having wanted to prove lack of credibility of witnesses as a defense the record shows he requested during trial to be able to present an expert as to the effect of crack consumption by government witness José I. Rivera Díaz. (Criminal No. 07-121, Docket No. 1048; Id., Docket No. 1081). Defendant Rivera-Rodríguez also attempted to impeach the handwriting of said witness in a handwritten document. (Id., Docket No. 1080; Id., Docket No. 1094).

(1970);[4] United States v. Sweeney, 878 F.2d 68 (2d Cir. 1989); Hill v. Lockhart, 894 F.2d 1009, 1010-11 (8th Cir. 1990) (rejecting claim of ineffective assistance based solely on allegation that counsel erroneously estimated the defendant's possible sentencing range under the Sentencing Guidelines).

Even if we consider as true petitioner's claim of his trial counsel's advice as to the applicable sentence, such a miscalculation of the applicable sentencing guidelines has also been considered, in a case where a defendant has waived his right to appeal under a plea agreement, as the kind of garden variety claims of error that are insufficient to find the waiver of appeal, under ordinary circumstances, or as a reversible error. Sotiron v. United States, 617 F.3d 27, 39 (1st Cir. 2010). Neither is such miscalculation considered sufficient to raise the miscarriage of justice criteria to set aside a sentence.[5] United States v. Calderón-Pacheco, 564 F.3d 55, 59 (1st Cir. 2009).

The record also provides prior notice to defendant Rivera-Rodríguez of the government's intention to seek enhancement of defendant's minimum mandatory sentence to the mandatory minimum term of twenty (20) years because of his prior felony drug offenses convictions. (Docket No. 1027, Information in Accordance with 21 U.S.C. §851). The minutes of the Court further advised defendants of the government's notice of filing the information as to the prior convictions of various co-defendants, including Rivera-Rodríguez, who were apprised by the Court individually prior to trial (Docket No. 1034).

---

[4] Even when pleading guilty, all pertinent facts cannot be known and all advice offered by counsel need not withstand a retrospective examination in a post-conviction hearing.

[5] The concept of miscarriage of justice criteria which is meant to be applied only for egregious cases and sparingly, without undue generosity. United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001).

As such, petitioner Rivera-Rodríguez cannot claim he was prejudiced by alleged trial counsel's error as to what he may have considered the sentence to be if convicted.

**B. Ineffective Assistance by Appeal Counsel.**

Petitioner Rivera-Rodríguez also claims he should have been sentenced under the least serious drug trafficking offense determined by the jury which he construes as only less than one hundred (100) grams of heroin, a mistake he attributes to appeal counsel.

First, the evidence as to petitioner Rivera-Rodríguez established he participated in the drug trafficking conspiracy initially when "Las Avispas Dos" (the second "Wasp" organization) group was reorganized since a meeting was held in the year 2003 and was then in charge of the crack cocaine that was distributed through the drug points at Borinquen Ward. There was also evidence he participated in the murder of one Haddock, in furtherance of the drug conspiracy. One of the government cooperators identified Rivera-Rodríguez as transporting crack cocaine to the Luis Palés Matos Public Housing Project from Borinquen Ward. Police surveillance placed Rivera-Rodríguez in his house providing narcotics to runners of the drug points. Testimonies were represented of some of the co-conspirators/cooperators to sustain these findings made when the Court ruled on the Rule 29 presentation referring to his participation in the conspiracy meeting, working initially as runner for the crack substance and being in control of the drug point of La Pluma, making personal delivery of crack to runners or sellers and distributing drugs at Luis Palés Matos Public Housing Project. Police officers José Bermúdez and Marilyn Torres also testified as to seizure of marihuana and drug paraphernalia at premises where Rivera-Rodríguez was present. In regard to a murder related to the controlled substance

distribution, there was testimony from Carlos Brito and José Rivera Díaz, corroborated by César Alicea, who identified defendant Rivera-Rodríguez as participating in the killing of Ricardo Haddock and subsequently moving the body, which was prompted by the belief Haddock was cooperating with law enforcement. Testimony from the Homicide Division established through one undercover agent (Sepúlveda) that he bought drugs from Rivera-Rodríguez. There was testimony as to the amounts of drugs sold by each shift and these illegal activities taking place within a thousand (1,000) feet from a school, including surveillance activities conducted at the drug point by Carmelo Pérez. (Criminal No. 07-121, Docket No. 1892, pp. 28-32).

Secondly, the jury returned a special verdict form in regards with the specific amount of drugs to be attributed to defendant Rivera-Rodríguez under the conspiracy charged in Count One of the Indictment. As raised by petitioner, there was a determination that Rivera-Rodríguez was involved solely with less than one hundred (100) grams of heroin. Still, his participation as to the additional remaining controlled substances object of the single conspiracy refers to being found by the jury involved with fifty (50) grams or more of cocaine base, five (5) kilograms or more of cocaine and one hundred (100) kilograms or more of marijuana. (Criminal No. 07-121, Docket No. 1124, Verdict Form; Docket No. 1935, Sentencing Transcript, pp. 9-12).

With the first and second predicates above, the sentence of the Court allowed for an enhanced penalty of a minimum of twenty (20) years and a maximum of life, for the doubling of the penalties had been clearly apprised to defendants when the government notified and the Court explained the filing of the information under Section 851.

When a jury has determined solely the conspiracy involved a type and quantity of drugs sufficient to justify a sentence above the default statutory maximum and has found a particular defendant guilty of participating in the conspiracy, the sentencing court may then lawfully determine the drug quantity attributable to that defendant and sentence him accordingly. Derman v. United States, 298 F.3d 34, 43 (1st Cir. 2002).

Petitioner Rivera-Rodríguez argues he should not have been sentenced above the least amount of statutory maximum prescribed for less than a hundred (100) grams of heroin as determined by the jury regarding to his participation in the conspiracy, which was twenty (20) years. For such argument, petitioner relies on United States v. Rhyne, 196 F.3d 207 (4th Cir. 1999) in that a defendant cannot be sentenced for more than the statutory maximum for "the least-serious, single drug conspiracy of which he may have been convicted".

After the decisions in Apprendi[6] and in Rhyne a sentencing court in the imposition of a sentence is not to exceed the statutory maximum applicable to an indeterminate quantity of the least-punished drug that was an object of the conspiracy. As argued by the government herein, such mandatory maximum term to be applied to the least-punished drug alleged in an indictment applies when we are dealing with a general verdict form to the jury and, thus, the jury did not determine the drug type involved. Such is not the situation in petitioner Rivera-Rodríguez' case.

---

[6] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) (other than the fact of a prior conviction, any fact that increases penalty for the crime beyond prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt).

The special verdict form attributed drug quantity beyond reasonable doubt by the jury as to each particular defendant, not merely a finding of a conspiracy-wide drug quantity. (Criminal No. 07-121, Docket Nos. 1121, 1122, 1123, 1125, and 1126).[7] Thus, we are not facing a situation where the sentencing court had to make an individualized finding as to drug quantity, for the special jury verdict considered the matter and there was ample trial evidence regarding defendant Rivera-Rodríguez' participation in the drug offense, the amount of drugs that were moved through the time of distribution examined and calculation by an expert as to the weight of particular quantity of drugs, sufficient for the sentencing court to sentence the defendant Rivera-Rodríguez as it did. United States v. González-Vélez, 466 F.3d 27 (1st Cir. 2006) (the special jury form to determine the conspiracy-wide drug quantity, made a finding that the court would need for sentencing).[8]

Thus, the first claim of ineffective assistance of counsel raised by petitioner Rivera-Rodríguez as to his appeal counsel regarding entitlement to sentencing under the lesser amount of drugs of the jury verdict does not prosper. Having indeed filed a direct appeal, appeal counsel is not required to raise therein every non-frivolous claims but may select from among them in order to maximize the likelihood of success on appeal. Smith v.

---

[7] The jury differentiated the amount of each controlled substance as to each of the defendants in the conspiracy in Criminal No. 07-121. As to co-defendants José Rivera-Moreno, Eduardo Pabón-Mandrell, José E. Torres-Canales, and Excel A. Muñiz-Massa, they were found to have one (1) kilogram or more of heroin; as to co-defendant Christian Arzola-Martínez, similar to petitioner herein, he was found to have participated in a conspiracy to possess with intent to distribute less than one hundred (100) grams of heroin.

[8] The maximum statutory penalty available to the district court at sentencing for a defendant convicted of a drug conspiracy is based on the drug quantity and amount reflected in the jury verdict attributable to the conspiracy as a whole. United States v. González-Vélez, 466 F.3d at 35-36; United States v. Irizarry, 404 F.3d 497, 504 (1st Cir. 2005) (explaining that in a drug conspiracy case, the jury sets the maximum penalty available to the district court at sentencing by determining the amount of drugs attributable to the conspiracy as a whole); see United States v. De La Cruz, 514 F.3d 121, 137 n. 7 (1st Cir. 2008).

Robbins, 528 U.S. 259, 288, 120 S.Ct. 746 (2000) (claim that counsel failed to make a particular argument on appeal).

A second claim of ineffective assistance of appeal counsel refers to the sentencing court having erred by applying the standard to a cross-reference murder and appeal counsel not presenting such argument on direct appeal.

The sentencing court determined the evidence established at trial there had been a killing that would constitute murder under Title 18, United States Code, Section 1111, and as such, it was also reflected in the presentence report and the guideline discussed for up to a sentence of life.

The Sentencing Guideline at 2D1.1(d)(1) provides:

> (d) Cross Reference
> (1) If a victim was killed under circumstances that would constitute murder under 18 U.S.C. §1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply §2A1.1 (First Degree Murder) or §2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

A court may apply the murder cross reference to a drug conspiracy conviction to sentence a defendant up to life in prison had it been established by a preponderance of the evidence. *See* U.S.S.G. §2D1.1(d)(1); United States v. Rodríguez-Marrero, 390 F.3d 1 (1st Cir. 2004); United States v. Reyes-Echevarría, 345 F.3d 1, 6 (1st Cir. 2003).[9]

Said murder was referred in Criminal No. 07-121 as an overt act in the conspiracy regarding the death of Ricardo Haddock as per page 7 of the Indictment. There was also

---

[9] *See* U.S.S.G. § 2D1.1(d)(1) (cross-referencing to first degree murder guideline "[i]f a victim was killed under circumstances that would constitute murder ... had such killing taken place within the territorial or maritime jurisdiction of the United States"). The first degree murder guideline, in turn, mandates a life sentence. *See id.* § 2A1.1 (setting base offense level of forty-three for first degree murder); *id.* Ch. 5 Pt. A (mandating life sentence for offense level of forty-three).

Gabriel Rivera-Rodríguez v. United States
Civil No. 11-2262 (ADC)
Report and Recommendation
Page No. 12

evidence presented at trial that placed petitioner Rivera-Rodríguez participating in such a killing. Even if such cross reference murder guideline was not applied, the amount of drugs attributed to Rivera-Rodríguez under the special jury verdict would have still allowed for the sentence imposed because of the amount of drugs attributed to Rivera-Rodríguez, making such a sentencing mistake, if any, and a failure to raise said grounds in the direct appeal to be harmless.

The application of the same sentence was further discussed in the government's response to above petition. The government submits the sentencing guideline that could be calculated for petitioner Rivera-Rodríguez, with or without the murder cross-reference, would have yielded the same results.[10] Thus, no prejudice can be established without the murder reference for the evidence and the conviction obtained would have allowed for the same sentencing calculation as to this defendant Rivera-Rodríguez.

More importantly, the government avers defendant was not sentenced beyond the statutory maximum of a life sentence. The government discusses the applicable enhancement regarding the supervisory role in the offense for Rivera-Rodríguez was clearly established as the owner of the drug point for crack cocaine at the Borinquen Ward. The amount of drugs moved therein could also be easily established for a base offense level of thirty eight (38).[11] Then, two (2) points would be added for the illegal activity took place in

---

[10] Besides the determination as to the amount of drugs as to defendant for the conspiracy charged and the special verdict form, the Court found these drugs were being distributed within one thousand (1,000) feet from a public housing or elementary school or park, and defendant was previously convicted in a court of law for a felony drug offense, a Class A felony. Additionally, it was found that, under Guideline Section 2D1.1(d)(1), a victim was killed under circumstances that would constitute a murder. (Criminal No. 07-121, Docket No. 1936, Sentencing Hearing).

[11] The special verdict of the jury found petitioner Rivera-Rodríguez, beyond reasonable doubt, responsible for each of the drugs and quantities mentioned in Count One of the Indictment, except as to heroin, where the responsibility found was for less than one hundred (100) grams.

a protected location for a total offense level of forty (40). There was also evidence that defendant possessed a gun, raising the total offense level to forty-two (42), and because of his supervisory role the two (2) additional level would raise the final offense level to forty-four (44), which when adjusted back to forty-three (43) would have still provided for a life sentence to be imposed.[12] Since with the level forty-three (43) found by the sentencing court through the murder-cross reference guideline, petitioner Rivera-Rodríguez was sentenced to forty-three (43) years of imprisonment, special supervised release term of fifteen (15) years and no fine, with the special monetary assessment of one hundred dollars ($100.00).

Regardless of the above government's contentions as to the available sentences allowed by the enhancements that were established during trial, the fact is the jury determined quantities of drug attributed to the defendants under the conspiracy, which statutory maximum would have still be life imprisonment.[13] After all, the statutory maximum for a cocaine conspiracy that involves more than five (5) kilograms is life imprisonment and only if no quantity of cocaine has been determined it would then be imprisonment of twenty (20) years. The court sentenced Rivera-Rodríguez to forty-three years (43) of imprisonment, a sentence that is less than the statutory maximum penalty of life imprisonment, which would not be in violation of defendant's rights. *See* United States

---

[12] The government's position is a reflection of the sentencing court's determining at the sentencing hearing wherein the Court clarified that even in the absence of the cross-reference to murder guideline, a life sentence was also warranted on other applicable guideline adjustments. (Criminal No. 07-121, Docket No. 1936, pp. 15-17).

[13] See sentencing court calculation of the sale of crack cocaine at the drug point managed by defendant Rivera-Rodríguez even when minimum shifts of three (3) times a week being at least larger than four point five (4.5) kilos, which starting with an offense level of thirty eight (38), with the enhancements allowed and discussed above, even without the cross murder reference, would have also yielded a guideline range of forty-three (43). (Criminal No. 07-121, Docket No. 1936, Sentencing Transcript pp. 2-3).

v. Villarmán-Oviedo, 325 F.3d 1, 18 (1st Cir. 2003); United States v. Johnstone, 251 F.3d 281, 285-286 (1st Cir. 2001) (sentence that was below the statutory maximum which would have applied had the jury failed to identify any specific amount of drugs attributable to defendant under the convicted drug conspiracy involving therein required amounts, rendered inapplicable the rule under Apprendi, 530 U.S. at 466).

**C. Cause and Prejudice Standard.**

Additionally, a petitioner must establish that counsel's action for the acts claimed to constitute ineffective assistance were objectively unreasonable. Cause is not synonymous with a ground for relief and even a finding of cause and prejudice would not entitle a petitioner to habeas relief, but merely allow a federal court to consider the merits of a claim that otherwise would have been procedurally default. Then petitioner must establish actual prejudice.

Actual prejudice that needs to be shown refers to a reasonable probability that, but for counsel's unprofessional errors the result of the proceedings would have been different. Strickland, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984); *see* Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029 (2000). *See* Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639 (1986)(holding that counsel's failure to raise a *particular* claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts. Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial).

A review of the several grounds raised on appeal as to petitioner Rivera-Rodríguez and the remaining co-defendants under the Court of Appeals' opinion refers to a spate of claims in the process, including challenges to certain evidentiary rulings, challenges to the sufficiency of the evidence, *ex-parte* communications with prospective jurors and challenges to the sentencing process and their outcomes.

Insofar as co-defendant Rivera-Rodríguez, the Court of Appeals for the First Circuit found no error in finding him individually responsible for at least four point five (4.5) kilograms of crack cocaine, an issue contested by appeal counsel as to the average vial of each vial of crack cocaine when the Court applied a mathematical formula.[14]  On appeal it was found the government presented evidence that defendants, including co-defendant Rivera-Rodríguez, conspired to distribute heroin, cocaine, cocaine base and marijuana and killed and attempted to kill individuals to further intimidate and exert control, with specific reference as to having killed Ricardo Haddock on or about September 12, 2004, upon a belief he was providing information about the drug distribution organization to law enforcement authorities.  (Criminal No. 07-121, Docket 2021, Opinion Court of Appeals, First Circuit, pp. 3, 5-6, 49).  Murders committed in the course of a drug conspiracy can be taken into account when sentencing for the drug crimes.  There is no Apprendi violation for it does not apply to findings made for purpose of sentencing guidelines were defendants are held accountable for murder in connection with the drug conspiracy.  United States v. Martínez-Medina, 279 F.3d 105 (1st Cir. 2002).   Insofar as appeals counsel's alleged errors

---

[14]  On appeal it was determined the trial court acted within its discretion to rely on the expert testimony of a chemist from the Forensic Science Institute, in assessing the drug quantity for which Rivera-Rodríguez was responsible.

ineffective assistance faces a higher hurdle for appellate counsel need not and should not raise every non-frivolous claim. Smith v. Robbins, 528 U.S. at 285, 120 S.Ct. 746; Jones v. Barnes, 463 U.S. 745, 103 s.Ct. 3308 (1983), and to succeed in making a showing that counsel was objectively unreasonable is evidently more difficult. Regardless, the Strickland test need not be addressed in a particular order, if it is easier to dispose of an ineffective claim on lack of sufficient prejudice, such course is deemed proper. Strickland, 466 U.S. at 697, 104 S.Ct. 2052. When an appeal has been duly filed, generally only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome. Smith v. Robbins, 528 U.S. at 288, 120 S.Ct. 765 (reference to Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Considering the above discussed, petitioner Rivera-Rodríguez has not established cause and prejudice as to the alleged ineffective assistance of counsel's claims in that alleged counsel's unprofessional errors so upset the adversarial balance that the trial was rendered unfair. Neither has petitioner established that counsel's representation fell below an objective standard of reasonableness and there exists a reasonable probability that, but for such errors by counsel, the result of the proceedings would have been different. Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574 (1986); Strickland, 466 U.S. at 694, 104 S.Ct. 2052.

Therefore, petitioner has not established that the identified omissions or acts of counsel were outside the wide range of professionally competent assistance nor that he suffered prejudice, for which in the absence of cause and prejudice, the post-conviction motion lacks merit.

## CONCLUSION

In view of the above, and there being no merit to the motion for post-conviction relief, it is recommended that petitioner' Section 2255 claim (Docket No. 1) be DENIED.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Amended Fed. R. Crim P. 59 (b)(2). *See also* Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

San Juan, Puerto Rico, this 29th day of November of 2012.

                                        s/ CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ-RIVE
                                          UNITED STATES MAGISTRATE JUDGE