THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GABRIEL RIVERA-RODRIGUEZ,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

Civil No. 11-2262 (ADC)

## OPINION & ORDER

On December 28, 2011, petitioner Gabriel Rivera-Rodríguez ("Rivera" or "petitioner") filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 ("petition"). **ECF No. 1**. After the government filed its response in opposition, **ECF No. 8**, the Court referred the petition to a United States Magistrate Judge for a Report and Recommendation ("R&R"), **ECF No. 11**. On November 29, 2012, United States Magistrate Judge Camille L. Vélez-Rivé issued an R&R in which she recommended denial of the petition. **ECF No. 14**. On December 26, 2012, Rivera objected to the R&R, **ECF No. 15**, and on March 10, 2015, the Court adopted the R&R and dismissed the petition with prejudice.[1] **ECF No. 24**. Petitioner filed a motion for reconsideration, **ECF No. 27**, which the Court denied because it did not raise new issues, **ECF No. 32**.

On April 17, 2015, petitioner filed a notice of appeal. **ECF No. 28**. On February 5, 2018, the Court of Appeals for the First Circuit vacated the Opinion and Order denying the petition

---

[1] After the original filing, petitioner filed supplemental petitions in 2013 and 2014.

and remanded the case to this Court. **ECF No. 41.**[2] Accordingly, the Court held an evidentiary

hearing to evaluate "whether trial attorney Masini [was] ineffective for failing to communicate

the plea offer and for failing to provide accurate advice about possible sentencing." **ECF No. 64**

at 3.

For the following reasons, the Court finds that petitioner's trial counsel was not

ineffective. Particularly, petitioner's trial counsel did not fail to communicate the October 22,

2007, plea offer and did not fail to provide accurate advice about possible factors to be

considered at sentencing and its consequences.

**I.       Procedural Background**

On March 19, 2007, petitioner was charged in **Criminal No. 07-121 (ADC)**, along with

123 other codefendants, in a two-count Indictment charging defendants with: conspiracy to

allegedly poses with intent to distribute heroin and cocaine.

Petitioner was convicted under Count One. The jury verdict showed that the jury

unanimously agreed it was proven beyond a reasonable doubt, that the quantities of controlled

substances which petitioner conspired to possess with intent to distribute were the following:

mixture or substance containing cocaine base (crack) was fifty (50) grams or more; heroin was

---

[2] The Court of Appeals for the First Circuit remanded "the ineffective assistance of counsel claims for an evidentiary hearing." **ECF No. 41** at 5. As stated in the Judgment remanding entered by the Court Appeals for the First Circuit, petitioner "claims that Attorney Masini was ineffective for failing to inform him of a plea offer the government made in October 2007, four months before trial, and for failing to provide accurate advice concerning his sentencing exposure when he was considering whether to accept a subsequent plea offer that was open just before trial." *Id.*, at 3.

less than one hundred (100) grams; the mixture or substance containing a detectable amount of cocaine was five (5) kilograms or more, and the quantity of a mixture or substance containing a detectable amount of marijuana was one hundred (100) kilograms or more. (**Criminal No. 07-121, ECF No. 1124**, Verdict Form).

During petitioner's sentencing, the Court found that Rivera was responsible for a quantity of drugs that would have yielded a base offense level ("BOL") of 38. The Court further found that, even without cross reference to the first degree murder (testimony was heard during trial regarding petitioner's involvement in the killing of Ricardo Haddock-Collazo), petitioner's total offense level would have been 43 because the BOL of 38 would have been boosted by several enhancements such as: offense occurring at a protected location (+2), use of weapons in relation to drug trafficking (+2), and supervisory role. "Thus, under either calculation, the guideline range was life imprisonment." **ECF No. 41** at 2. Petitioner was sentenced to 43 years of imprisonment followed by a supervised release term of 15 years. Juan Masini-Soler ("Masini") was petitioner's attorney at trial and sentencing.

Petitioner, through new counsel, Attorney Anita Hill, filed a direct appeal to the Court of Appeals for the First Circuit which issued its decision affirming the conviction and sentence imposed. *See United States v. Rivera-Rodríguez*, 617 F.3d 581 (1st Cir. 2010). (**Criminal No. 07-121, ECF No. 2021**).

Petitioner moved to vacate the judgment via the instant petition, **ECF No. 1**, this time through Attorney Raúl Castro-Lang. In essence, petitioner argues that his trial counsel, Attorney

Masini, was ineffective for failing to communicate a plea offer tendered by the government in October 2007 and while failing to provide accurate advice about possible sentencing consequences. More specifically, petitioner averred he did not learn of the October 2007 offer until after the conclusion of his appeal when appeal counsel sent him the case file. *See* **ECF No. 41** at 3. Petitioner also submitted an affidavit asserting that, at some point, trial counsel assured him that if he lost trial, his BOL would not be greater than 38, and he was more likely than not going to receive a sentence at the low end of the 235-293 month guideline sentencing range. *Id.* In his affidavit, petitioner also attested as to being assured by trial counsel he need not worry about consideration of the murder of Ricardo Haddock-Collazo. *Id.* Relying on Attorney Masini's advice, petitioner averred, he rejected the 15-year plea offer made at the commencement of trial. *Id.* On the other hand, would he have received accurate advice concerning his sentencing exposure, he would have accepted one of the government's offers. *Id.*

Adopting the United States Magistrate Judge's R&R, **ECF No. 14**, and based on the record, this Court denied the petition without a hearing and subsequently denied petitioner's motion for reconsideration. **ECF No. 24**. Petitioner filed a notice of appeal. The Court of Appeals granted certificate of appealability as to petitioner's ineffective assistance of trial counsel claims and entered judgment. **ECF No. 41**.

The Court of Appeals reasoned that "[i]f, as Rivera alleges, Attorney Maisini told him that his BOL would be no greater than 38 and that he was likely to be sentenced at the low end of the 235-293 month sentencing range," Attorney Masini erred "not only in failing to anticipate

that the murder cross-reference... but also... [in] underestimate[ing] the drug quantity... [and] overlook[ing] clearly relevant sentencing enhancements." **ECF No. 41** at 4. The Court of Appeals added, "[t]his combination of errors might rise to the level of a 'gross mischaracterization' of the likely outcome." *Id.*

Moreover, the Court of Appeals also noted that, in addition to the required showing of counsel's ineffectiveness, petitioner "must also demonstrate that he would have accepted the 15-year offer but for counsel's inaccurate sentencing prediction." **ECF No. 41** at 4. It also reasoned that, although the sentencing Court advised petitioner of the minimum and maximum statutory penalties, it did not discuss the applicable guideline range. *Id* at 5. Accordingly, the Court of Appeals accepted that "before the trial date, and before the government announced its intent to file a section 851 notice, Attorney Masini assured him that, if he lost at trial, (1) his BOL would be no greater than 38, (2) he 'did not have to worry about the alleged murder of Mr. Haddock,' and (3) he was likely to receive a sentence at the low end of the 235-293 month sentencing range." *Id.* As noted by the Court of Appeals, petitioner "insists that Masini never advised him that he was facing a guideline sentencing range of life imprisonment rather than the 235-293... there is not contradictory evidence in the existing record." *Id.*

Finally, the Court of Appeals vacated the Opinion and Order at **ECF No. 24** and remanded the ineffective assistance of counsel claims for an evidentiary hearing. *See* **ECF No. 41**. Accordingly, this Court held an evidentiary hearing. **ECF Nos. 60-64**. Petitioner and Attorney Masini testified at the hearing.

### A. Petitioner's testimony

Petitioner testified that he was serving a 43-year sentence. **ECF No. 64** at 5. Immediately after, petitioner's counsel proceeded to introduce into evidence a letter dated October 22, 2007, sent by Assistant United States Attorney José Capó-Iriarte ("AUSA") addressed to counsel containing a plea offer. *See* **Petitioner's Exhibit 1**. Such offer provided for a sentencing recommendation of 235 months. The offer was extensive through October 31, 2007.[3] Petitioner attested seeing Exhibit 1 for the first time after his appeal when Attorney Anita Hill, returned to him the trial and appellate case files. Petitioner denied ever having discussed with Attorney Masini about that plea offer. *Id* at 7. When asked what he would have done had Attorney Masini discussed with him the October 22, 2007 plea offer, petitioner averred "this would have been like the first offer, and I would have asked him to try to get a better offer for me. And if it wouldn't have been possible, then I would have accepted it." *Id* at 8.

Circling back to the relationship between petitioner and Attorney Masini, petitioner was asked if they ever had a plea agreement conversation. **ECF No. 64** at 8. Petitioner responded, "on several occasions, I asked him if he would be able to get me a plea offer... he told me that he wouldn't be able to negotiate a plea for me until the government didn't turn him -- turned over to him some discovery documents." *Id* at 8. That conversation, petitioner testified, took place "months before the trial". *Id.*

---

[3] The record establishes that negotiations continued thereafter and that a plea offer was also made on November 9, 2007. **ECF No. 679** and during the first day of trial.

Immediately after, petitioner was presented with questions related to the murder of Ricardo Haddock-Collazo. Petitioner stated that he was always assured he would not "respond for that death, because there were other people held responsible for that death at the state court… he also said the [Government] hadn't provided proof of that death." *Id* at 9.[4]

Petitioner was then asked about his conversations with Attorney Masini regarding his sentencing exposure. *Id* at 9. Petitioner averred, "[Attorney Masini] explained to me that I would be a level 38. And since my state case was associated or tied to the federal case… I would be as a first offender, and I would be on 235 months to 293 months. And that the judge was a reasonable judge, and that he would -- thought that he could be able to get me the 235 months, if I were to lose at the trial." *Id* at 9.

Petitioner went on to testify that on the same day the trial began "[Attorney] Masini informed me that the government was making an offer of 15 years if everybody were to plead guilty. It was something like a package plea." *Id* at 10. The Judge "gave [co-defendants] ten minutes so that we could all get together and discuss the group offer." *Id*. Reportedly, all co-defendants met and were all "complaining that 15 years was too long, that it wasn't fair that everybody was being offered the same plea." According to petitioner, at that time, Attorney Masini started discussing with one of the co-defendants who was instructing petitioner not to

---

[4] Petitioner's allegations are contradicted by the discussion had between Attorney Masini and AUSA Capó at the status conference held on October 12, 2007. Thereafter, Attorney Masini inquired and AUSA Capó responded about petitioner's involvement in the murder, asked for a proffer of cooperating witnesses, and Reports of Investigations ("302s"). **(Criminal No. 07-121, ECF No. 1951)**.

accept the offer. Attorney Masini intervened asserting that was petitioner's decision to make. *Id*. The Court then asked petitioner if anyone advised him to reject the plea. Petitioner responded, "one of the guys told me like not to accept it." *Id* at 11. Petitioner was asked if he verbalized his rejection of that offer. "No," he replied, "no, because there was no conclusion. There was—no result was reached." *Id*.

Petitioner averred that he would have accepted the October 22, 2007 plea offer if Attorney Masini had advised him that he faced a life sentence if found guilty. *Id*. Likewise, petitioner said he would have accepted the 15-year plea offer tendered the first day of trial "[i]f it would have been 15 years for me alone, of course." *Id* at 12.[5]

Counsel proceeded to interrogate petitioner as to his interpretation of the Judge's warnings given to him as well to the other co-defendants just before the commencement of trial. Specifically, petitioner was asked "you were informed in open court that your mandatory minimum of ten years would be increased to 20 years with also an exposure of life imprisonment. How did you interpret that admonition of the Court?" *Id*. Petitioner answered, **"[w]ell, one thing is what the letter says, and another thing is what you're exposed to."** *Id* (emphasis added). Petitioner continued to testify that Attorney Masini always told him that his case fell under a base offense level 38 under the sentencing guidelines with a guideline range of

---

[5] It must be noted that during the first day of trial, what the government offered was a "package deal" to be accepted by all defendants. Since many rejected the offer, trial proceeded as scheduled. Thus, petitioner's argument constitutes hindsight speculation.

235 months to 293 months. Petitioner concluded, "relying on that, **I didn't pay too much attention to that warning[,]**" (Court's warning). *Id* at 12 (emphasis added).

Petitioner further testified that, once he saw the Presentence Report, which related him to the murder of Ricardo Haddock-Collazo, "[m]y family and myself were looking into hiring another attorney, because we were upset because [Masini] had given me wrong advice concerning a homicide that I wasn't accountable for." *Id* at 13. Petitioner was asked about his statement to the probation officer indicating he "opted to go to trial because [he] wanted to prove the witnesses lied." *Id*. Petitioner answer by indicating "I didn't know that there was a plea offer for me." *Id* at 14. He added, "[a]nd the 15 years, the plea offer that was made in court, that it was an all or nothing offer, I didn't have any option to accept it, because the -- to prove that the witnesses were lying. And I was going to appeal, so I was… I was going to appeal my case, and I couldn't go to accept my responsibility because it would affect -- it would affect my option to appeal." *Id* at 14.

On cross examination, petitioner was asked whether he "wanted to plead guilty because [he was] guilty." *Id* at 18. Petitioner responded "[i]f I would have been offered a plea and the attorney would have explained to me of whatever was being offered, I would have plead guilty." *Id*. Specifically in connection with the October 2007 plea offer, petitioner testified during his cross examination that "[i]f they would have explained it to me, I would have accepted it." *Id* at 19.

On cross-examination, the government asked petitioner whether he remembered that on February 10, 2008, Attorney Masini had given him a written statement explaining that he was exposed to life imprisonment. Petitioner said he did not remember that happening. *Id* at 24. The government then asked whether anyone else advised petitioner of his exposure to life imprisonment, to which he replied "not necessarily. The Court says one thing and the guidelines say something else. And since Attorney Masini always told me that that was at level 38." *Id.*

Government's Exhibit A[6] was furnished to petitioner. At the hearing, the following exchange between AUSA and petitioner ensued:

> Q. [...] You do remember that letter, right?
> A. No.
> Q. You don't remember it?
> A. (Shaking head from side to side.)
> Q. That it was given to you on that date?
> A. No.
> Q. Now, sir, the fact is that Mr. Masini not only explained to you verbally what you were exposed to, but he also did it in writing?
> A. No. That didn't happen.
> Q. That didn't happen?
> A. (Shaking head from side to side.)
> Q. That's your testimony?
> A. (Nodding head up and down.)
> Q. Okay.

*Id* at 28-29.

---

[6] Exhibit A is a Memorandum dated February 10, 2008, from Attorney Masini addressed to petitioner. In the same, Attorney Masini, given the trial proximity, adviced petitioner of the "package plea offers", inquires if petitioner will be further interested in seeking plea negotiations in exchange of a 15-year recommendation, and alerts about the existence of cooperators and the murder related evidence in which he will be exposed from 30 years to life.

The Court asked petitioner whether he recognized Exhibit A as a document that he had seen prior to the evidentiary hearing. Petitioner responded, "I hadn't seen that document **before Attorney Castro Lang showed it to me** when Mr. Masini turned it over to him." *Id* at 29 (emphasis added). When questioned if he had seen it as part of discovery for this hearing, petitioner replied in the affirmative. *Id* at 29-30. The government posed no further questions on the subject.

### B.  Attorney Masini's testimony

The government called Attorney Masini as its first and only witness. Attorney Masini testified that he was petitioner's Court-appointed trial counsel and that he "usually" visited petitioner at the Metropolitan Detention Center in Guaynabo, Puerto Rico once a month, usually on Sundays. *Id* at 40. As to petitioner's sentencing alternatives, Attorney Masini testified having presented three alternatives" to petitioner. *Id* at 41. "One he rejected outright, which was cooperation. The other two alternatives were either plea or go to trial. And from the very beginning, he was more inclined to go to trial than to take a plea." *Id* at 41. He added that there were "several offers, that I informed him all of them." *Id* at 41. Attorney Masini specifically remembered informing petitioner of several offers made before trial "but he was not inclined to accept them." *Id*. The government asked Attorney Masini to explain to the Court how he would go about discussing the plea offers with petitioner. He replied, "at least one of them, prior to trial, was in writing in a memo that I wrote to him saying what he was exposed to, in terms of my appreciation of the case, as a Criminal History II. And I warn[ed] him that in this case, there

was some issues of a murder -- my recollection is it was a person by the name of Haddock. And if that was proven to be true, he could be sentenced to 30 to life." *Id*. Attorney Masini recognized government's "Exhibit A" as the written "memo" he had testified about. *Id*. Attorney Masini testified that he prepared the Memo either on February 9th or February 10th of 2008, but he was sure he showed it to petitioner on February 10, 2008, at the Metropolitan Detention Center in Guaynabo, "more likely than not, at night." *Id* at 45.[7]

The Government then asked Attorney Masini the reason why the Memo did not contain petitioner's signature in the space provided for those purposes. Attorney Masini explained, "[b]ecause that's the extraction from my computer files, thus it doesn't have a signature, because I did not handle Gabriel's appeal. That was done by Ms. Anita Hill. And she asked me for the case file, and I gave to her the entire case file, including discovery. And I did not keep a copy of that after I make the voucher for the case." *Id* at 47. However, Attorney Masini testified that he did discuss the Memo with petitioner and that petitioner had signed the Memo (acknowledging receipt) on October 10, 2008. *Id* at 48.

Going into further details as to the location of the original Memo, Attorney Masini testified that he reached out to Attorney Anita Hill, who responded twice that she did not have the Memo in her files. Attorney Masini was not able to track down or obtain the original document signed by petitioner before the evidentiary hearing. *Id* at 50-53. In addition to handing

---

[7] Through Exhibit B, the government introduced into evidence an "extraction" performed from Attorney Masini's computer. The data presented showed that Exhibit A had been last modified on February 10, 2008. Notice is taken of the fact that February 10, 2008, was a Sunday.

over the Memo to petitioner and obtaining his signature, Attorney Masini testified that he verbally explained the content of the Memo to petitioner prior to the commencement of the trial. According to Attorney Masini's testimony, after the presiding Judge warned defendants as to the sentence exposure before trial started, they were granted a couple of minutes to meet with counsel to discuss the government's last plea offer. Masini asserted, "we again explained to them the consequences of that enhancement. And as a matter of fact, some of them plead guilty afterwards." *Id* at 53[8].

Questioned about the October 22, 2007 plea offer, Attorney Masini testified he "vaguely remembered that offer." *Id* at 54. Attorney Masini added that, every time he received an offer from the government, he would "transmit the offer" to petitioner. *Id*. "And in this particular case, I remember that the answer was always, I want to go to trial." *Id*. As to the October 22, 2007 plea offer, Masini admitted not remembering the specific terms of the offer, but he attested that he discussed it with petitioner. "I do remember explaining to him all the offers, because **I was very -- this is -- this has been one of the most difficult cases I have ever had, because of the murder. I was particularly concerned with the issue of the murder. So, I was very careful to explain to him all the details of all the offers.**" *Id* (emphasis added). Even though Attorney

---

[8] This portion of Attorney Masini's testimony is corroborated by the record. During the second day of trial, co-defendant Emmanuel Dávila pleaded guilty pursuant to a plea agreement. (**Crim. No. 07-121, ECF No. 1039**). During the sixth day of trial three (3) other co-defendants made straight guilty pleas. *Id* at **ECF Nos. 1066, 1068, 1070.**

Masini discussed all plea offers with petitioner, petitioner's "response was unequivocal[ly] that he wanted to go to trial." *Id*.

The government asked Attorney Masini "[d]id you ever tell him that he was exposed to life imprisonment?" "Well," Attorney Masini responded, "if found guilty of the Haddock case, but his perception was that he was not really involved with the Haddock murder, so he should not be found guilty of that. And I believe that was briefed in my PS -- in my sentencing memorandum." *Id* at 55. However, Attorney Masini testified that his then-client was always inclined to proceed to trial "[t]hat was his inclination. That was his desire. That's what he transmitted to me all the time." *Id* at 56. "I can tell you my impression, but it's only my impression because he never shared with me why he wanted to go to trial. He just said he wants to go to trial." *Id* at 56. The government inquired:

> Q. He never explained to you why he wanted to go to trial, but he told you
> he wanted to go to trial?
> A. Yes.
> Q. Regardless of the offers?
> A. Yes.
> Q. Regardless of the explanations of his exposure?
> A. Yes.

*Id* at 56.

During cross-examination, petitioner's counsel asked Attorney Masini about petitioner's Exhibit 1 (the October 22, 2007 plea offer) which Attorney Masini did not recognized at first. However, after showing Exhibit 1, petitioner's counsel inquired

> Q. Okay. So, you don't recall any written plea offer, correct?

A. Well, now that I see this one, I recall that one. What I'm saying –
Q. Is this the Plea Agreement that you claim you spoke with Gabriel about or you don't recall?
A. Okay. This is one of the plea agreements that I discussed with him, yes, because it's October 22, and I know I discussed another one with him afterwards. Yes.
Q. So now your testimony is that you do recall this plea offer?
A. Now that I see the document, yes.

*Id* at 58.

Attorney Masini was then asked about petitioner's Exhibit 2, which consists of a bundle of motions filed by Attorney Masini before petitioner's trial ended, introduced into evidence during petitioner's in-chief allocution. **Criminal No. 07-121 (ADC) ECF Nos. 550, 679, 723, 762, 831, 1451, 1756, 1462, 1952.** Masini was specifically cross-examined and asked about motions filed between October and December 2007.

Q. … if you filed a motion on December 14th, 2007, after the time period's expired in the original October letter, requesting ten days to inform whether Mr. Rivera would enter a change of plea, you wouldn't file that motion unless he was willing to consider a plea; isn't that so?
A. No, that's not so.
Q. It is not so. So, you filed a motion requesting an extension even though he wanted to go to trial? Is that what you're telling the Court?
A. Yes. Out of an abundance of caution, yes.
Q. Okay. Now, isn't it a fact that by December 14, the deadline that Mr. Capo had given you of October 31st had long expired?
A. Well –
Q. Correct?
A. -- it is correct that it's what it says in that letter, but it's… Because we had an open channel of communication, and although it says there it expires, Mr. Castro Lang, you know very well that the offers that expire, they keep on regenerating. So yes, there was an open channel of communication.

*Id* at 58-60.

The cross-examination continued with questions about several other motions. Responding to the government's objection to that line of questions, petitioner's counsel manifested that his intention was to show that "[Masini] provided [] an excuse for not being able to discuss the plea with defendant, because the government had failed to comply with the discovery concerning the murder." *Id* at 66-67. A couple of questions after, Attorney Masini admitted that on or around December 29, 2007, he moved for dismissal of the Indictment due to the government's failure to provide evidence concerning petitioner's participation in the murder. *Id* at 67-68. Attorney Masini explained that despite filing such motions, he always discussed the case with petitioner and his options. To that end, Attorney Masini testified "The only thing is I wanted to have some hard evidence.[9] I had given him different alternatives about what will happen, and that's my discussion. What all of these motions say was I was discussing the case with him and explaining to him the alternatives", "I was telling him that I didn't have the hard evidence on the issue of the Haddock murder, yes." *Id* at 69. Attorney Masini did not recall if he had any document showing that "at some point [the Government] offered a sentence of more or less 20 years." *Id* at 73.

Attorney Masini was then questioned as to the reason why he did not keep an electronic copy of the Memo signed by petitioner. *Id* at 70-71. "Ten years ago I did not have a scanner[,]" Attorney Masini responded. *Id*. However, he explained that he kept a physical copy of the

---

[9] See: Crim Case No. 07-121, ECF No. 1951 at 24-32, Transcripts of the status conference held on February 5, 2009, where, in response to defense's inquiries, the government alluded that aside from autopsy reports, pictures of Haddock, photos of his dead body, all there was consisted of testimonial evidence.

signed Memo in his "file," which he turned over to petitioner's appellate counsel, Attorney

Anita Hill. *Id.*

Attorney Masini was also asked about his advice in connection with the murder charges.

To that extent, Attorney Masini explained "I explained to him what a conspiracy is, and in a

conspiracy, he could be found responsible in a conspiracy even if he didn't have an active role.

And that's basic in that conspiracy." *Id* at 74. He added that he argued before the trial Court that

petitioner was not responsible for the murder charges and also "complained" about the drug

amounts attributed to petitioner. *Id* at 76.

Petitioner's counsel asked Attorney Masini point blank

Q. Do you recall telling Mr. Rivera that if he lost at trial, that would be what
he was -- that his guidelines should be that [level 38]?
A. I remember telling him that he could even get life, yes.
Q. Did you say level 38?
A. I don't recall –
Q. Did you –
A. I don't recall having said that. I recall having said that he could be
exposed to life.
Q. All right. Now, and at the sentence hearing of Gabriel, okay, on May
20th, you again argued to the Court that he should be held liable for a base
offense level 38, Criminal History Category I, 235 to 293 months; is that
correct?
A. Of course. I'm arguing for my client.
…
Q. You mentioned that guideline to him in your discussions, that was what
he should get under the guidelines if he lost?
A. That was one of the guidelines I discussed with him.
Q. Yes.
THE COURT: But the question is if that's what you told him that was the
maximum he could get if he lost at trial?
THE WITNESS: No, because I told him that the maximum could be life.

*Id* at 77-78.

## II.    Legal Standard

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by [an] Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (*citing Hill v. United States*, 368 U.S. 424, 426-27 (1962)).

Claims that do not allege constitutional or jurisdictional errors are properly brought under § 2255 only if the claimed error is a "fundamental defect which fundamentally results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Id.*

To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citations and internal quotation marks omitted). This standard is "highly deferential" and courts "indulge a strong presumption that . . . under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Walker v. Medeiros*, 911 F.3d 629, 633 (1st Cir. 2018) (citing *Strickland*, 466 U.S. at 689).

The second prong requires that defendant "show that the deficient performance prejudiced the defense, which requires proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016). Failure to prove either prong of an ineffective assistance claim is fatal to the claim. *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012). The petitioner bears a heavy burden of proof in this regard. *See Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996).

## III.    Analysis

Petitioner's ineffective assistance argument is twofold. He claims that Attorney Masini (i) did not inform him of the October 22, 2007 plea offer and (ii) failed to provide accurate sentencing exposure advice at the time petitioner was considering the plea offer on the table at the time the trial was about to begin.

Sixth Amendment right to counsel extends to the plea-bargaining stage. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). "With regard to plea agreements, counsel has a critical obligation... to advise the client of the advantages and disadvantages of a plea agreement." *Parsley v. United States*, 604 F.3d 667, 671 (1st Cir. 2010)."The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from immediate judicial supervision." *Premo v. Moore*, 562 U.S. 115, 125, 131 S.Ct. 733, 741, 178 L.Ed.2d 649 (2011).

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). In cases where "a plea bargain has been offered; a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v Cooper*, 566 U.S. 156, 168 (2012). "When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id*. The remaining question is then "what, if any, prejudice resulted from the breach of duty." *Missouri v. Frye*, 566 U.S. at 147. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id*.

### (i) October 22, 2007 plea offer

Petitioner claims that Attorney Masini did not inform him of the October 22, 2007 letter containing a 235-months plea offer. Petitioner further claims that he first learned of that plea offer after his appellate counsel, Attorney Anita Hill, returned the case file to him.

Petitioner testified "on several occasions, I asked [Masini] if he would be able to get me a plea offer... he told me that he wouldn't be able to negotiate a plea for me until the government didn't turn... over to him some discovery documents." **ECF No. 64** at 8. In connection with the October 2007 plea offer, petitioner testified during his cross examination, "[i]f they would have explained it to me, I would have accepted it." *Id* at 19.

On the other hand, Attorney Masini testified that he did inform petitioner of the October 22, 2007 plea offer, as well other plea offers tendered by the Government. Attorney Masini testified that he "usually" visited petitioner once a month, typically on Sundays. *Id* at 40. As to petitioner's alternatives, Attorney Masini testified "I present[ed] three alternatives. One he rejected outright, which was cooperation. The other two alternatives were either plea or go to trial. And from the very beginning, he was more inclined to go to trial than to take a plea." *Id* at 41. He added that there were "several offers, that I informed him all of them." *Id* at 41. Attorney Masini testified that although he did not remember the specific details of the October 22, 2007 plea offer, he did in fact inform petitioner of that plea offer. Attorney Masini further acknowledged this had been "one of the most difficult cases" he had handled, because of the murder. *Id* at 54. Also, he stated being "particularly concerned with the issue of the murder. So, I was very careful to explain to [petitioner] all the details of all the offers." *Id* at 54. On cross-

examination, Attorney Masini, when shown the terms of the plea offer, testified "This is one of the plea agreements that I discussed with him, yes, because it's October 22, and I know I discussed another one with him afterwards." *Id* at 58.

After carefully listening to both petitioner and Attorney Masini, and considering their demeanor as well as the evidence submitted, the Court finds Attorney Masini's testimony stating that he informed petitioner of the October 22, 2007 plea offer credible. Attorney Masini was especially concerned in this case because of the murder charges in the Indictment as evinced by his discovery requests regarding the "murder" incident. He even admitted this case was "the most difficult" case he had handled and because of its difficulty he was "careful to explain to him all the details of all the offers." *Id* at 54. The Court also notes that as soon as October 24, 2007, Attorney Masini filed a motion informing the Court, among other things, of a plea offer received on October 23, 2007. **Criminal No. 07-121 (ADC) ECF No. 550.**

On cross-examination, petitioner's counsel tried to establish that the motions filed by Attorney Masini in connection with the lack of discovery were proof that Attorney Masini had not discussed the plea offers with petitioner. Petitioner's counsel also tried to demonstrate that the filing of several motions for extension of time to inform a change of plea meant that petitioner was willing to consider a plea offer instead of going to trial. However, Attorney Masini clarified both points. He testified that he filed the motions for extension of time "out of an abundance of caution" and that he did, in fact, discuss the October 22, 2007 plea offer with petitioner before filing for an extension of time on December 14, 2007. *Id* at 64. Also, he alluded

to the "good communication" established with counsel for the government to enable continued negotiations. Actually, the last of such negotiations, for a plea offer of 15 years of imprisonment was rejected by petitioner on the date of trial. The record is clear that on the date of trial, prior to commencing the same, defendants were offered a package negotiation, were given time to consider it and was rejected, even by defendant. At the time as well, prior to the government's filing of a notice for enhanced penalties, the Court warned the defendants that if found guilty the mandatory minimum penalty was to increase from 10 to 20 years of imprisonment with a maximum penalty of life imprisonment. Similarly, defendants were advised of the evidence the government intended to present at trial. All things considered, the Court finds Attorney Masini's testimony truthful and worthy of credibility, and thus finds that Attorney Masini informed petitioner of the October 22, 2007 plea offer.

### (ii) Attorney Masini's assurances

Petitioner averred that Attorney Masini "assured him that if he lost at trial, his BOL would be no greater than 38, he was likely to receive a sentence at the low end of the 235-293[10] month guideline sentencing range, and he 'did not have to worry about anything related to the murder of Mr. Haddock.'" **ECF No. 41** at 5. Based on that advice, petitioner "reject[ed] the 15-years plea offer made just before trial and asserted that he could have accepted one of the

---

[10] A mandatory minimum sentence of 20 years of imprisonment equates to 240 months; a sentence mid-range of what defendant alleged and certainly higher than "the low end".

government's offered plea agreements had counsel provided accurate advice concerning his sentencing exposure." *Id.*

Petitioner's testimony at the evidentiary hearing was very similar to the statements included in his petition. He testified that Attorney Masini assured him that even if he lost at trial, he "would be a level 38. And since my state case was associated or tied to the federal case, I would be a... first time offender, and I would be on 235 months if I were to lose at the trial." **ECF No. 64** at 9. Admittedly, petitioner "did not pay too much attention" to the Judge's sentencing warnings voiced the first day of trial. Petitioner attempted on hindsight to justify his actions blaming his decision to go to trial on Attorney Masini's alleged ill advice. However, prior to commencing trial he was clearly advised of the implications of the government filing of an Information under 21 U.S.C. sec. 851 which entailed a mandatory minimum sentence higher than 235 months. It is evident from petitioner's own testimony and actions that he wanted to exercise his right to trial and also wanted to preserve his right to appeal. For the following reasons as well as the assessment of petitioner's demeanor during his testimony, the Court finds petitioner's testimony untruthful, not credible, and not supported by the record.

### (a) Attorney Masini's Memorandum of February 10, 2008

On cross-examination, petitioner was asked in more than one occasion if before trial commenced anyone had told him that he could be sentenced to life in prison if found guilty. Petitioner failed to answer with a yes or no. Instead, petitioner kept repeating that "Attorney Masini told me it's one thing what the law says and another thing what the sentencing

guidelines said[,]" and reiterated "the sentencing guidelines state what you're exposed to. And as Attorney Masini told me, that at level 38, I would be exposed to 235 to 293 months." Clearly, petitioner did not want to answer and remained evasive. The government then moved to show petitioner the Memo. Petitioner twice said he did not remember the Memo. **ECF No. 64** at 28.[11] However, seconds later petitioner's recollection changed when it was the Court posing the questions about the Memo. As soon as the Court asked petitioner if he recognized the Memo "as a document that you have seen prior to this date," petitioner admitted that he had seen it when Attorney Castro-Lang showed it to him. After "Mr. Masini turned it over to him." *Id* at 29. Addressing the Court's second question, petitioner admitted he had also seen the Memo [Exhibit A] as part of the discovery for this hearing. *Id* at 29-30.

Attorney Masini testified that he prepared the Memo (Exhibit A) and showed it to petitioner on February 10, 2008, at MDC, Guaynabo, Puerto Rico. According to Attorney Masini petitioner signed the Memo and chose to proceed to trial. The government also presented Exhibit B, which consists of a screenshot of Attorney Masini's computer files. Exhibit B reflects that the Memo was last modified on February 10, 2008. As previously mentioned, the Memo contains a description of the charges against petitioner including the following drug amounts

---

[11] "Q. [...] You do remember that letter, right? [Exhibit A]
A. No.
Q. You don't remember it?
A. (Shaking head from side to side.)"

"one kilo of heroin, 5 kilos of cocaine, 50 grams of crack, and 100 kilos of marihuana." The Memo goes on to explain

> **As we have discussed before, if found guilty**, you face a statutory minimum penalty of 10 years and a maximum of life. According to the Sentencing Guidelines, the sentence could fluctuate between 24 and 27 years, assuming a Criminal History II. However, **as in this case there are murder allegations (Haddock) in relation to the conspiracy, if this is proven, the sentence will probably be between 30 years to life imprisonment** (life).

> The only alternative available to not go to trial, is to accept the offer made by the prosecution to plead guilty (as other have already done) in exchange for a sentence recommendation of +/- 20 years... However, **on various occasions, we have discussed this offer and you have not accepted it, not even for starting a transactional dialogue with the Prosecutor's Office. Notwithstanding, this afternoon I spoke with Prosecutor Capo and he told me that if the 10 [codefendants] that are going to trial tomorrow agree to make a Plea, he would lower the recommendation to 15 years. As I imagine that it is almost impossible for everyone to accept a Plea, I need you to tell me if you want me to try to negotiate that your Plea be for 15 years, or continue with your decision to go to trial**...

> I am prepared for Trial, but **I cannot guarantee the outcome of it. You are the only one who must make the decision of whether to accept a Plea (either the +/- 20 years or try to improve it before the trial begins tomorrow) or continue with your decision to go to trial**, which is expected to last 3-4 weeks. Please indicate, below, your decision.

**Government's Exhibit A** (emphasis added).

Petitioner's counsel quickly tried to attack the Memo by pointing out that the Memo lacked petitioner's signature. However, Masini explained that the Memo submitted to the Court was a copy of the original Memo that was discussed with and signed by petitioner on February 10, 2008. Again, Masini testified that petitioner did sign the Memo and opted to proceed to trial.

**ECF No. 64** at 48-49. However, Masini's efforts to locate the executed Memo before the hearing were fruitless. According to his testimony, Attorney Anita Hill, to whom he passed petitioner's case file after the conclusion of the trial, had returned the case file to petitioner upon conclusion of the appeal process and she only had "briefs" in her possession.

Although Masini was not able track down the location of the case file, his version of the chain of custody of petitioner's case file seems legitimate when pieced together with parts of petitioner's testimony. Notably, in his futile efforts to establish that he was not aware of the October 22, 2007 plea offer, petitioner did mention that Attorney Anita Hill gave him the case file after filing his appeal. In petitioner's words, "When [Attorney] Anita Hill made the direct appeal, [] she sent me the box, and I reviewed the documents." *Id* at 7. Petitioner's counsel followed up, "[Attorney Anita] Hill…returned the documents, the legal file to you?" to which petitioner replied, "yes." *Id*. Thus, according to the record and the evidence presented by the parties, Attorney Masini transferred the case file, including the signed Memo, to Attorney Anita Hill for purposes of petitioner's appeal. Attorney Anita Hill, in turn, handed over the case file to petitioner once her work in petitioner's appeal process was over. Thus, the signed Memo was returned to petitioner, which would explain why neither Attorney Anita Hill nor Masini were able to locate it for purposes of the evidentiary hearing.

Petitioner's counsel continued attacking both the Memo and Masini's testimony by questioning Masini for his failure to keep a digital copy of the signed Memo. **ECF No. 64** at 70-71. However, Masini responded that back in 2007 he did not have a scanner and that he only

kept a copy of the signed Memo in his physical file, which, as described above, eventually found its way back to petitioner. *Id.*

Petitioner's counsel continued his cross-examination with several other attempts at discrediting Masini's testimony in connection with the February 10, 2008 visit and the discussion that took place at MDC, Guaynabo, between Masini and petitioner. However, it is worth noting that petitioner sought and obtained an order from the Court authorizing MDC Guaynabo to issue a certification as to whether or not Masini visited petitioner on February 10, 2008. *See* **ECF No. 55.**[12] Petitioner's counsel did not move to introduce the certification, if any, into evidence. Neither did he use any documents from MDC Guaynabo to impeach Masini or refute his story about the February 10, 2008 visit, which would have to some extent undermined Masini's testimony and credibility. Accordingly, the Court finds Masini's testimony to be uncontested and credible. Exhibit A makes very clear, that "on various occasions" the plea offer had been discussed and consistently rejected without consideration to "starting a transactional dialogue".

### IV.    Conclusion

Clearly, petitioner's ineffective assistance claims are not true. The record reflects he consistently rejected several pleas offers, wanted to go to trial, wanted to question the witnesses against him. He even rejected a last-minute offer for a sentence recommendation of 15 years. While four (4) co-defendants entered pleas of guilty on the second and sixth day of trial,

---

[12] The motion at ECF No. 55 and orders issued thereupon were restricted because "the certification constitutes cross examination/impeachment evidence of counsel Masini". Since the evidentiary hearing ended a long time ago, there is no longer a need to keep petitioner's request at **ECF No. 55** confidential or out of public view.

petitioner stood firm in his decision to proceed with trial. Based on the testimony, the witnesses'

demeanor and the record, the Court finds that (i) Masini did in fact inform petitioner of the

October 22, 2007 plea offer and (ii) explained to petitioner his sentencings exposure at the time

petitioner was considering the plea offer available at the beginning of trial. Attorney Masini

discussed the October 22, 2007 plea with petitioner offer and provided competent advice as to

petitioner's sentencing exposure as evidenced by the Memo. (Government's **Exhibits A, B**).

Petitioner's claims that Attorney Masini never informed him of the exposure to 30 years of life

in prison are simply rebutted by the record and not credible. Likewise, petitioner's claim that

Masini never informed him of plea offers other than the offer commented by the trial Judge on

the first day of trial, are not credible. Because failure to meet either prong of *Strickland* is fatal,

*United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012), based on the record, the evidence

and testimony offered during the evidentiary hearing, the Court finds that petitioner's claims of

ineffective assistance in his petition **at ECF No. 1** are meritless and should be **DENIED**.

### Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, a "district court must

issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the

applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. foll. § 2255.  To merit a

COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*,

529 U.S. 473, 484 (2000). For the reasons stated before, the Court finds that petitioner is not

entitled to a COA.  Therefore, a COA is **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 24th day of March, 2022.

S/**AIDA M. DELGADO-COLÓN**
**United States District Judge**